1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JESSICA COOK,<br><br>          Plaintiff,<br><br>   v.<br><br>THE JM SMUCKER COMPANY ET AL.,<br><br>          Defendants. | CASE NO. 24-mc-00018<br><br>ORDER QUASHING SUBPOENA DUCES TECUM |

## 1.  INTRODUCTION

This matter comes before the Court on Defendant J.M. Smucker's motion to quash or in the alternative motion for protective order for Plaintiff Jessica Cook's subpoena to Institute for Environmental Health, Inc. ("IEH"). Dkt. No. 1. For the reasons below, the Court GRANTS Smucker's motion to quash Cook's subpoena in its entirety.

## 2.  BACKGROUND

This matter originates from Cook's lawsuit filed in the U.S. District Court for the District of South Carolina. Dkt. No. 1 at 2. On May 20, 2022, Defendant Smucker issued a voluntary recall notice for its Jif brand peanut butter produced at

its Kentucky facility because of possible Salmonella contamination. Cook alleges she was injured when she consumed contaminated Jif peanut butter she purchased at Target. *Id.*

Smucker has a contractual relationship with third-party IEH to test its products, including at its Kentucky facility. *Id.* at 2. On May 20, 2022—the day of Smucker's recall—Smucker's counsel at Hogan Lovells engaged IEH for services, including "environmental monitoring and microbiological testing . . . and advising on scientific issues and/or other matters bearing on regulatory compliance issues." Dkt. No. 1-1 ¶ 8. According to Smucker, this arrangement was outside the normal course of business. Dkt. No. 1 at 14. IEH agreed to keep all information privileged and confidential. Dkt. No. 1-1 ¶ 8.

On March 1, 2024, Cook served a subpoena to IEH with the following requests:

> [D]ocuments and communications, electronic or otherwise, in your possession, custody, or control regarding contamination events and/or outbreaks at The J.M. Smucker Company's Lexington, Kentucky facility, including but not limited to any work you performed on such matters.

Dkt. No. 1-2 at 7.

The subpoena required compliance in Centralia, Washington—this District. *See id.* Cook emailed Smucker the subpoena and a copy of the subpoena on March 1, 2024, but Smucker contends Cook did not provide it with notice of the subpoena before of serving it to IEH. Dkt. No. 1; Dkt. No. 1-2 at 11-16. On March 15, 2024, Smucker responded to Cook's subpoena, objecting that Cook failed to follow Rule 45's notice requirements for subpoenas to third-parties and that the subpoena

sought privileged and confidential information. Dkt. No. 1-2 at 30. Smucker moved to quash once the parties hit in impasse. Dkt. No. 1 at 4.

## 3.  ANALYSIS

First, the Court finds Smucker has standing to bring its motion. "A party generally lacks standing under Federal Rule of Civil Procedure 45 to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter." *S.R.L. v. Full Speed Ahead, Inc.*, No. C08-1372 RSM, 2010 WL 11527270, at *1 (W.D. Wash. Jan. 4, 2010), *on reconsideration in part sub nom. Campagnolo S.r.L. v. Full Speed Ahead, Inc.*, No. C08-1372 RSM, 2010 WL 11527322 (W.D. Wash. Feb. 16, 2010) (listing authorities). Here, Smucker alleges Cook seeks its privileged information and work product through the subpoena. Thus, the Court holds Smucker has standing to challenge Cook's subpoena under Fed. R. Civ. P. 45. *C.f. Full Speed Ahead, Inc.* at *1 (holding that a party did not have standing to challenge a subpoena under Rule 45 because they did not allege the subpoena sought privileged information, but also noting "any party has standing to seek a protective order under Rule 26(c).").

Second, Smucker does not demonstrate that the subpoena must be quashed for Cook's failure to serve Smucker the subpoena before she served it to IEH. Under Fed. R. Civ. P. 45(a)(4), a notice and copy of a subpoena must be served to each party before it is served to the person it is directed to "[i]f the subpoena commands the production of documents, [or] electronically stored information . . . before trial." As Smucker points out, courts disagree over whether it is permissible to serve a third-party subpoena simultaneously onto that party and other parties. *See* Dkt.

No. 1 at 8 (citing *Rollins v. Traylor Bros., Inc.*, Case No. C14-1414JCC, 2017 WL 1756576, at *2 (W.D. Wash., May 5, 2017); *Fla. Media, Inc. v. World Publ'ns, LLC*, 236 F.R.D. 693, 694–95 (M.D. Fla. 2006); *Morris v. Sequa Corp.*, 275 F.R.D. 562, 566 (N.D. Ala. 2011)).

Smucker artfully states Cook failed to serve her subpoena with "adequate notice," "before" and "in advance" of serving it on IEH. *See* Dkt. No. 1. But the record shows Cook served her subpoena to IEH and Smucker on the *same* day, March 1, 2024. *See* Dkt. No. 1-2 at 7, 11-16. Smucker does not provide facts to clarify whether it was served the subpoena *concurrently* or minutes or hours *after* IEH. *See id.* In any event, Smucker at least had notice of the subpoena on the same day it was served on IEH and compliance was not required until March 25, 2024. The Court will not quash Cook's subpoena for lack of proper notice on these facts.

Still, Smucker has demonstrated that the subpoena should be quashed because compliance would require IEH's disclosure of Smucker's "privileged or protected matter." "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies . . ." Fed. R. Civ. P. 45(d)(3)(A)(iii). Smucker argues Cook's subpoena seeks privileged communications as well as work product.

The attorney-client privilege protects confidential communications between attorneys and clients that are made for giving legal advice. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). Smucker argues the subpoena seeks privileged information as shown by Smucker's privilege log. *See* Dkt. No. 1-2

at 18-23; 25. Indeed, Smucker told Cook that the subpoena requested privileged information when it conferred with her. Dkt. No. 1-2 ¶ 6. Smucker's descriptions of the documents in its logs are vague but do include email addresses that appear to be linked to its counsel Hogan Lovells. *See id.* Based on these facts alone, however, the Court cannot ascertain whether Cook's subpoena would compel disclosure of attorney client privileged communications. *See*, *e.g.*, *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021) (noting "some [attorney-client] communications might have more than one purpose," and holding the Ninth Circuit applies the "primary purpose" test to determine whether such communications' primary purpose is to give or to receive legal advice rather than business or tax advice).

Smucker's argument for quashing the subpoena on the basis of work-product is more convincing. "The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects 'from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.'" *In re Grand Jury Subpoena (Mark Torf / Torf Env't Mgmt.)*, 357 F.3d 900, 906 (9th Cir. 2004) (quoting *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir.1989)). "A party representative includes the party's attorney, consultant or agent." *Phoenix Techs. Ltd. v. VMware, Inc.*, 195 F. Supp. 3d 1096, 1101 (N.D. Cal. 2016) (citation omitted). The Ninth Circuit applies a "because of" standard to determine whether documents are work-product, considering "the totality of the circumstances and affords protection when it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *Id.* at 908 (citing

*In re Grand Jury Subpoena (Mark Torf / Torf Env't Mgmt.)*, 357 F.3d 900, 908). "Such documents may only be ordered produced upon an adverse party's demonstration of 'substantial need [for] the materials' and 'undue hardship [in obtaining] the substantial equivalent of the materials by other means.'" *In re Grand Jury Subpoena*, 357 F.3d at 906 (brackets in original) (citing Fed. R. Civ. P. 26(b)(3)).

The totality of the circumstances here—as Smucker conveys—is the following: Hogan Lovells, on behalf of Smucker, engaged IEH in anticipation of litigation arising from its voluntary recall of Jif peanut butter on May 20, 2022. Dkt No. 1-1 ¶ 6. Smucker asserts "Hogan Lovell's engagement of IEH was intended to support its provision of advice to Smucker on a variety of legal matters related to food safety and regulatory compliance and to assist with Smucker's efforts to defend itself in anticipated litigation resulting from the voluntary recall," such as Cook's action. *Id.* ¶ 7. Smucker expected IEH to keep its information privileged and confidential under their agreement and to notify Hogan Lovells in the event of a subpoena, which IEH ultimately did. *Id.* ¶¶ 9-10. Finally, Smucker raised the work-product privilege in its objections to Cook for the subpoena. Dkt. No. 1-2 at 34.

Based on these facts, the Court holds that Cook's subpoena would likely require IEH's disclosure of protected work product documents, and without any argument or showing from Cook otherwise, including a substantial need, quashes Cook's subpoena in its entirety. *See* LCR 7(b)(2) ("[I]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.").

## 4.   CONCLUSION

For these reasons, Smucker's motion to quash is GRANTED, and Cook's subpoena is QUASHED in its entirety.

It is so ORDERED.

Dated this 21st day of June, 2024.

_____
Jamal N. Whitehead
United States District Judge